KEVIN KERVENG TUNG, P.C.
38-21 Main Street, Suite 3D
Flushing, New York 11354
(718) 939 4633

Attorneys for Plaintiffs
GENSCRIPT CORPORATION
AND YUN YANG

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENSCRIPT CORPORATION AND YUN YANG,<br><br>               Plaintiffs,<br><br>vs.<br><br>AA PEPTIDES, LLC, a.k.a. AAPPTEC, a.k.a. AAPPTec, a.k.a. Advanced Automated Peptide Protein Technologies, a.k.a. APPTECH, a.k.a. AAPPTECH;<br><br>               Defendant. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs GenScript Corporation and Yun Yang, by and through their attorneys, as and for their complaint against defendant AA Peptides, LLC, a.k.a. AAPPTEC, a.k.a AAPPtec, a.k.a. Advanced Peptide Protein Technologies, a.k.a. APPTECH, a.k.a. AAPPTECH (hereinafter referred to as "AAPPtec"), says as follows:

### PARTIES

1.  Plaintiff GenScript Corporation (hereinafter referred to as "GenScript") is a corporation organized under the laws of the State of Delaware, and maintains its principal place of business at 120 Centennial Avenue, Piscataway, New Jersey 08854.

1

2. Plaintiff Yun Yang (hereinafter referred to as "Yang") was and is a citizen of the People's Republic of China, residing at 78 Xuangbaixiang, Xiaolingwei, Nanjing city, China, Zip code 210014.

3. Plaintiff Yun Yang was and is an employee of Nanjing Jinsite Technology Co. ("Nanjing Jinsite"), a subsidiary of plaintiff GenScript located in Nongjing, Jiangsu Province in China.

4. Defendant AA Peptides, LLC is a limited liability company organized under the laws of the State of Kentucky, and maintains its principal place of business at 6309 Shepherdsville Road, Louisville, Kentucky 40228.

5. Defendant AA Peptides, LLC was and is also doing business as AAPPTEC, AAPPTec, Advanced Automated Peptide Protein Technologies, APPTECH, and AAPPTECH (hereinafter together referred to as "AAPPTec").

## JURISDICTION

6. This is an action for (1) breach of Warranty; (2) product liability; and (3) negligence.

7. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332.

8. Plaintiff GenScript and defendant AAPPTec entered into contract which is subject matter of the Complaint.

9. This Court has personal jurisdiction over defendant AAPPTec because Defendant AAPPTec's representative(s) negotiated the contract with plaintiff GenScript with physical presence in this judicial district in the State of New Jersey in 2007.

2

10.     Defendant AAPPTec's employees and representative(s) communicated by e-mails and telephone calls from and to plaintiff GenScript which located within this judicial district of the State of New Jersey when further negotiating and concluding the contract which gives rise to the claims of the Complaint in 2007.

11.     Defendant AAPPTec's employees and representative(s) communicated by e-mails and telephone calls from and to plaintiff GenScript during the performance of the contract which gives rise to the claims from 2007 to 2008.

12.     Plaintiff Yun Yang suffered physical injury due to the explosion of the product which was purchased by Plaintiff GenScript from defendant AAPPTec.

13.     In addition, this Court has personal jurisdiction over defendant AAPPTec because defendant AAPPTec was and is, upon information and belief, doing businesses in the State of New Jersey by actively and continuously soliciting businesses, selling products and providing services to individuals and entities in the State of New Jersey.

14.     Upon information and belief, Defendant AAPPTec was and is continuously and actively soliciting businesses, selling products and providing services to individuals and business entities national wide in the United States.

15.     Upon information and belief, Defendant AAPPTec was and is continuously and actively soliciting businesses, selling products and providing services to individuals and business entities all over the world.

16.     Defendant AAPPTec' actions subject it to the jurisdiction of this Court because its actions fall within New Jersey's long arm statute, N.J.R. 4:4-4.

17.     Venue is proper pursuant to 28 U.S.C. §1391 (a) and (c) because defendant AAPPTec is subject to personal jurisdiction of this judicial district.

## FACTS

18.     Defendant AAPPTec is now, and at all times mentioned in this complaint was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of peptide synthesizers, including model Apex 396 DC FW-S (hereinafter referred to as "Apex 396").

19.     Defendant AAPPTec is now, and at all times mentioned in this complaint was, in the business of inspecting, maintaining, installing, and selling at retail to members of the public various types of peptide synthesizers, including model Apex 396 DC FW-S designed and manufactured by defendant AAPPTec.

20.     In or about 2007, defendant AAPPTec's representative Dr. Hossain Saneii ("Saneii") went to GenScript Corporation in the State of New Jersey negotiating about selling instrument Apex 396 peptide synthesizers designed and manufactured by defendant AAPPTec.

21.     After Dr. Saneii's visit at plaintiff GenScript in 2007, defendant AAPPTec and plaintiff GenScript negotiated the purchase by e-mails and phone calls back and forth.

22.     After negotiation, plaintiff GenScript purchased Apex 396 DC FW-S (hereinafter referred to as "Apex 396") from defendant AAPPTec in or about August 2007 for total purchase price of $93,110.00.

23.     The instrument purchased were listed in the invoice issued by defendant AAPPTec to GenScript on August 17, 2007, #0002222, attached hereto and made part of the complaint as Exhibit A.

24.     The instrument Apex 396 was understood by parties to perform both liquid and solid phase peptide synthesis and organic synthesis reactions. The description and designed

4

function of the instrument Apex 396 is hereby attached hereto and made part of this complaint as Exhibit B.

25.     AAPPTec provided with GenScript a one (1)-year warranty for the instrument Apex 396 from the date of installation. The details of the warrant is attached hereto and made part of the complaint hereof as Exhibit C.

26.     Defendant AAPPTec further warrants that the instrument Apex 396 will perform according to the specifications stated in the apex® DC FW-S Operator's Manual.

27.     Pursuant to the purchase agreement, the instrument Apex 396 was shipped to Nanjing Jinsite Technology Co. ("Nanjing Jinsite"), a subsidiary of plaintiff GenScript located in Nongjing, Jiangsu Province in China, for installation in or about August 2007.

28.     The instrument Apex 396 was installed by technicians appointed and sent by defendant AAPPTec in September 2007 at Nanjing Jinsite.

29.     After the installation of Apex 396, and at all times thereafter, Nanjing Jinsite's employees and personnel used and operated the instrument Apex 396 within and in compliance with the guidelines found in the apex® DC FW-S Operator's Manual and following operation training provided by defendant AAPPTec.

30.     After the installation of Apex 396, and at all times thereafter, Nanjing Jinsite's employees and personnel performed preventative maintenance activities as outlined in the apex® DC FW-S Operator's Manual.

31.     During the course of operating Apex 396, the instrument malfunctioned due to certain defects and it could not perform its function as designed and described in the specifications in the apex® DC FW-S Operator's Manual.

5

32.     From September 2007 to June 2008, the following defects were noticed and detected, including but not limited to (1) one the arms of the instrument failed to transfer Piperidine and DMF properly; (2) leakage at Left Arm Dilutor; (3) server problem on the Chamber Cover; (4) one of the arms could not work properly to reach correct position causing program error and synthesis pause; and (5) large leakage from the Insulate Block.

33.     After detecting these defects of Apex 396, GenScript informed AAPPTec for repair and service. After several times of repair efforts made by AAPPTec's technicians, Apex 396 still could not perform properly and deliver satisfying result according to the descriptions and the specifications stated in the apex® DC FW-S Operator's Manual.

34.     After discussion between GenScript and AAPPTec about the defects and unsatisfying performance after repair, AAPPTec agreed to replace the Apex 396 with a completely new one.

35.     From October 18, 2008 to October 20, 2008, the new Apex 396 was installed at Nanjing Jinsite by defendant AAPPTec's technicians and/or representatives.

36.     The new Apex 396 again malfunctioned and failed to perform according to the descriptions of the instrument and the specifications stated in the apex® DC FW-S Operator's Manual.

37.     The newly installed Apex 396 had defects including but not limited to (1) continuous deteriorated leakage at the cover of Rack RV96; (2) failure of one of the arms to move properly; (3) Y-Axis Motor and Y-Z Driver board malfunctioned; (4) continuous software operating system errors; and (5) old fusion of one of the arms X axis problems.

38.     From October to November 2008, defendant AAPPTec, by and though its agent in China, sent its technicians to repair and replace the malfunctioned parts.

6

39. From December 9, 2008 to December 11, 2008, AAPPTec's engineers from the United States examined, repaired the replaced Apex 396 and updated all the software for operating the instrument.

40. After being examined, repaired and assembled by AAPPTec' engineers and technicians, the instrument remained unchanged and was in the same condition at the time of the injury and explosion hereafter alleged.

41. On or about December 18, 2008, during the operation of the instrument Apex 396 under control, supervision and watch by plaintiff Yun Yang, employee of plaintiff Nanjing Jinsite, a subsidiary of plaintiff GenScript, the instrument Apex 396 suddenly exploded.

42. On or about December 18, 2008, plaintiff Yang used and operated the instrument Apex 396 within and incompliance with the guidelines stated in apex® DC FW-S Operator's Manual and following the training and instructions provided by defendant AAPPTec without any negligence or carelessness.

43. The Apex 396 was totally damaged due to the explosion.

### COUNT I BY PLAINTIFF GENSCRIPT-BREACH OF WARRANTY

44. Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 43, as though fully set forth here.

45. Apex 396 failed to perform according to apex® DC FW-S Operator's Manual as warranted by defendant AAPPTec.

46. Due to the defects, malfunction and explosion of instrument Apex 396, Apex 396 was damaged and totaled. Plaintiff GenScript was deprived of benefit of the bargain. Plaintiff GenScript suffered the loss of contract price of $93,110.00 for the purchase.

7

47.     The malfunction, defects and explosion of Apex 396 caused plaintiff GenScript to purchase additional expensive accessories, parts and instruments from defendant AAPPTec, and plaintiff GenScript suffered damages in total amount of $14,485.00.

48.     The defects, malfunction and explosion of Apex 396 caused plaintiff in cancellation of 1578 peptide orders and delay of producing about 2218 peptide orders and shipments. Because of the delay and its failure to deliver satisfying result, plaintiff GenScript suffered consequential direct loss in amount of $853,554.00 and indirect loss in amount of $853,122.00.

49.     The defects, malfunction and explosion of Apex 396 further wasted massive raw materials to produce peptides. Plaintiff GenScript suffered damages on the raw materials in total amount of $25,900.00.

50.     Plaintiff GenScript also invested in personnel and time to use and operate the instrument to produce peptide. Due to defects and malfunction of Apex 396, such investment was spent in vain without return. Therefore plaintiff GenScript suffered a loss of $4,412.00 in such investment.

51.     For the foregoing, plaintiff GenScript suffered total damage in amount of $1,844,583.00.

52.     WHEREFORE, plaintiff GenScript claims the sum of $1,844,583.00 in damages from the defendant AAPPTec, plus interest and cost.

### COUNT II BY PLAINTIFF YUN YANG-PRODUCT LIABILITY

53.     Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 52, as though fully set forth here.

8

54.     At all times mentioned in this complaint, the instrument Apex 396 and its component parts were defective as to design, manufacture, and warnings, causing the instrument and its component parts to be in a dangerous and defective condition that made them unsafe for their intended use.

55.     At all times mentioned in this complaint, plaintiff Yang used and operated the instrument Apex 396 within and in compliance with the guidelines in apex® DC FW-S Operator's Manual and following the training and instructions provided by defendant AAPPTec without any negligence or carelessness on her part.

56.     As a direct and proximate result of the defective and dangerous condition of the instrument Apex 396 described above, plaintiff Yang sustained the serious physical injuries in her hands, fingers and face as result of the explosion.

57.     Due to the injuries, plaintiff Yang suffered damages in lost wages in amount of $2,941.00 and medical expenses in amount of $12,794.00

58.     Due to the injuries, plaintiff Yang endured unnecessary pain and suffering, and the injuries in the hands, fingers and face left permanent scars with damage in amount of one million ($1,000,000.00).

59.     WHEREFORE, plaintiff Yang has been damaged and is entitled to compensatory damages in the amount of $1,015,735, plus interest and cost.

## COUNT III BY PLAINTIFF YANG-NEGLIGENCE

60.     Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 59, as though fully set forth here.

9

61.     At all times mentioned in this complaint, defendant AAPPTec so negligently and carelessly designed, manufactured, constructed, assembled, inspected, and sold the instrument Apex 396 that it was dangerous and unsafe for its intended uses.

62.     At all times mentioned in this complaint, defendant AAPPTec so negligently and carelessly inspected, maintained, installed, repaired and sold the instrument Apex 396 that it was dangerous and unsafe for its intended uses.

63.     At all times mentioned in this complaint, plaintiff Yang used and operated the instrument Apex 396 within and in compliance with the guidelines in apex® DC FW-S Operator's Manual and following the training and instructions provided by defendant AAPPTec without any negligence or carelessness on her part.

64.     As a direct and proximate result of the negligence and carelessness of defendant as described above, plaintiff Yang sustained the serious physical injuries in her hands, fingers and face as result of the explosion.

65.     Due to the injuries, plaintiff Yang suffered damages in lost wages in amount of $2,941.00 and medical expenses in amount of $12,794.00.

66.     Due to the injuries, plaintiff Yang endured unnecessary pain and suffering, and the injuries in her hands, fingers and face left permanent scars with damage in amount of one million ($1,000,000.00).

67.     WHEREFORE, plaintiff Yang has been damaged and is entitled to compensatory damages in the amount of $1,015,735.00, plus interest and cost.

WHEREFORE, plaintiffs GenScript and Yang respectfully request that judgment be entered in their and pray:

10

        a.      For an award of damages in amount of $1,844,583.00 sustained by

plaintiff GenScript on Count I;

        b.      For an award of damages in amount of $1,015,735.00 sustained by

plaintiff Yun Yang on Count II and III;

        c.      For an award of prejudgment and post judgment interests;

        d.      For an award of reasonable attorneys' fees and other expenses incurred by

plaintiffs GenScript and Yang in the pursuit of this action; and

        e.      For costs of suit and such further relief as the Court may deem just and

appropriate.

## DEMAND FOR JURY TRIAL

      Plaintiffs GenScript and Yang hereby demands a trial by jury as to all issues herein so

triable.

Dated: Queens, New York
       August 28, 2009

                       KEVIN KERVENG TUNG, P.C.

                       By: _____
                            Kevin K. Tung

                       Kevin K. Tung, Esq.
                       Kun Zhao, Esq.
                       38-21 Main Street, Suite 3D
                       Flushing, NY 11354
                       (718) 939 4633

                       Attorneys for Plaintiffs
                       GenScript Corporation and
                       Yun Yang

## L. CIV. R. 11.2 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

In accordance with L. Civ. R. 11.2 and 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing statements in this L. Civ. R. 11.2 Certification are true and correct.

Dated: August 28, 2009

KEVIN KERVENG TUNG, P.C.

By:    Kevin K. Tung

38-21 Main Street, Suite 3D
Flushing, NY 11354
Tel:    (718) 939 4633
Fax:    (718) 939 4468

Attorneys for Plaintiffs
GenScript Corporation and
Yun Yang

12

**EXHIBIT A**

## AAPPTec LLC - 2007

6309 Shepherdsville Road
Louisville, KY 40228-1027
USA

Voice: 502-968-2223
Fax: 502-968-3338
Email: ltaylor@aapptec.com

# INVOICE

Invoice Number: 0002222
Invoice Date: Aug 17, 2007
Page: 1

**Bill To:**

GenScript Corporation/Peptide Dept
120 Centennial Ave., Ste 105
Piscataway, NJ 08854
USA

**Ship to:**

Nanjing Jinsite Technology Co.
78 Shuangbai Xiang Street
Tele: 25-8605-6928
Nonjing,Jiangsu 210014
China

| Customer ID | Customer PO | Payment Terms |
|---|---|---|
| gen100 | 11381 | 50% due with purchase order |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| Mariam Ghazi | Best Way | 8/17/07 | 9/16/07 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | 960090 | Inst,Apex 396 DC Inst Model 34 | 112,000.00 | 112,000.00 |
| 1.00 | | 300 ml reagent bottles with caps | | |
| 1.00 | | 4 x 9 monomer rack assembly, 35 ml vials | | |
| 1.00 | 10147601 | Asm,96 RV block TFE | | |
| 1.00 | 99000101 | Block, Asm 96 well Cleav vials | | |
| 1.00 | 100018 | Plate, Top clamp 96 well (MEMO | | |
| 1.00 | 31000101 | Computer, HP | | |
| 1.00 | 10057001 | Monitor, Hewlett-Packard | | |
| 1.00 | 300292 | Printer, Cannon | | |
| 1.00 | | Installation & training | 2,800.00 | 2,800.00 |
| 1.00 | | Packaging, shipping and insurance | 2,950.00 | 2,950.00 |
| 1.00 | | Special Genscript 22% discount | 24,640.00 | -24,640.00 |
| 1.00 | | customer deposit | 43,680.00 | -43,680.00 |

Check/Credit Memo No:

| | |
|---|---|
| Subtotal | 49,430.00 |
| Sales Tax | |
| Total Invoice Amount | 49,430.00 |
| Payment/Credit Applied | |
| **TOTAL** | **49,430.00** |

**EXHIBIT B**



# aapptec
### advanced automated
### peptide protein technologies

## Spirit of Innovation



# Apex 396

## Automated Multiple Peptide Synthesizer

 aappτec

# Apex 396

## Automated Multiple Peptide Synthesizer

The Apex 396 is the established market leader in multiple and single peptide synthesizers. This instrument is ideal for producing peptide and protein fragments, alanine scans, epitope mapping and peptide parallel libraries. Synthesis scales range from 15 mg up to 2 grams.

**QUALITY**

- Due to the unique design of the Teflon® reactor block, the resin stays at the bottom of the reactor, allowing it to stay in full contact with the reaction solution. Because of this, the resin does not stick to the sides of the reactor, thus resulting in higher yields of complete peptides with fewer deletion impurities.

- The nitrogen-assisted bottom filtration quickly and thoroughly empties the reactor while maintaining an inert atmosphere, resulting in quick emptying. This process, in combination with fast delivery, minimizes the decomposition of the peptide resin due to extended contact with acid or base and allows quick, thorough and efficient washing of the resin to prevent impurities due to carryover.

- These features make the Apex 396 the obvious choice for automated ambient temperature parallel synthesis of peptides.



A fully enclosed work area contains and controls fumes and any unpleasant odors.



Seal
N$_2$ — Reaction Vessel

Top Plate

Waste/ Collection

### FLEXIBILITY

● The Apex 396 has the flexibility and capacity to produce a single peptide, a few peptides or up to 96 peptides simultaneously.

● The dual robotic arms accurately and precisely transfer reagents between any two points on the worktable.



● The flexibility of the indexed tabletop allows for any shape, size or placement of containers.

● The Apex 396 is flexible enough for any type of chemistry, including preactivation of amino acids.

● The Apex 396 is adaptable for the use of different reactor sizes.

● The easy-to-use Windows® software enables the chemist to readily develop protocols for most any type of chemistry or to use standard protocols, such as Fmoc- or Boc- as standard on the Apex 396.

● Options in reactor style and configuration, the size and number of monomer vials in the monomer rack, and the size and number of reagent containers provide additional flexibility.

### MIXING

● Gentle but efficient vortex mixing thoroughly mixes resin and reagents while preserving the integrity of the resin beads.

● Vortex mixing provides highly consistent and sustainable reactions and ensures consistent and reliable production of high quality peptides and proteins.



## CONVENIENCE



- ● Automatic cleavage of final peptide products into vials or micro titer plates

- ● The speed and flexibility of the robotic arms, combined with the indexed tabletop, allow for development of innovative new methodologies.

- ● The multiprobe fast delivery system dramatically reduces the time required for dispensing reagents or solvents to the entire reactor. As a result, the time the resin is in contact with reactants is similar between the first well and the 96th well, which produces uniform results across the entire reactor. For example, the six probes can wash an entire 96-well reactor within a minute.

- ● Using the six-diluter option, unique volumes of up to six different reagents can be accurately and precisely transferred simultaneously, with transfer to all wells of the 96-well reactor taking only about 2 - 3 minutes.

- ● Reactors are available in two styles: Classic and Ares™.

- ● Classic reactor blocks perform reactions at ambient temperature under inert atmosphere. The reactor remains sealed at all times to maintain continuous inert atmosphere throughout the entire synthesis sequence.

- ● In the Ares™ reactor block, each well is sealed and completely isolated to prevent any possibility of

cross-contamination. In specially equipped Ares™ 396 synthesizers, the reactor block can heat reactions above the boiling point of the solvent without significant loss of solvent.

- ● All reactor blocks are formed from chemically resistant Teflon®, and each style reactor features nitrogen-assisted bottom filtration to quickly and thoroughly empty the reactor while maintaining an inert atmosphere.

- ● The flexible Windows®-based software does not require knowledge of peptide chemistry. The user can select standard protocols, such as Fmoc- or Boc-, or can develop custom protocols. Simply click on the reactants, reagents and cycles to be added to the synthesis matrix, and the software makes all of the assignments. The software also saves set-up time by automatically calculating the amounts of solvents and reagents required.



## aappтec
aDvanceD auтomaтeD
peptiDe protein tecHnoLogies
Spirit of Innovation

aappтec • 6309 Shepherdsville Rd. Louisville, KY 40228-1027, U.S.A.
phone: 502.968.2223 • toll-free: 888.692.9111 • fax: 502.968.3338
email: info@aapptec.com • www.aapptec.com



## Product Description

### Apex 396

The Apex range provides an easy to use automated liquid handling system capable of both liquid and solid phase peptide synthesis and organic synthesis reactions. All reagents and reaction vessels are contained within the cabinet on the indexed aluminum alloy tabletop. There is no additional fume hood required.

Up to 96 compounds can be synthesized simultaneously within the Teflon reaction blocks, which are also available in 40-well, 16-well and 8-well formats for easy synthesis scale-up. In a 96-well reaction format, the average synthesis time for a 30 mer peptide is 20 minutes per peptide. Depending on the synthesis chemistry, the cycle time for amino acid addition can range from only 45 minutes to 1.5 hours.

The coaxial spray probe delivers solvent accurately down to 0.5 ml. The coaxial probe has two channels: one for solvent and the other for inert gas (either nitrogen or argon). During solvent aspiration, the removed solvent is replaced with inert gas; during solvent delivery, gas is maintained throughout synthesis. The probe is also responsible for liquid detection, which is identified by measuring the solvent dielectric constant. This ensures the probe enters the solvent just below the liquid level, minimizing probe exposure and therefore minimizing cross-contamination between precious samples.

Reaction vessels are emptied by positive nitrogen pressure, maintaining an inert environment and ensuring effective removal of all solvents and reagents from the bottom of the vessel; such emptying also keeps the sample resin at the bottom of each reaction vessel.

The Apex range is available in four models:

**Apex 396-SC**: with single arm and classic reactor
**Apex 396-DC**: with dual arm system and classic reactor
**Apex 396-DC-FW-S**: with dual arm system, classic reactor, fast-wash capability and single needle probe on second arm
**Apex 396-DC-FW-M**: with dual arm system, classic reactor, fast-wash capability and multi-needle probe on second arm

The Apex 396 is the biggest selling instrument of the aapptec range, which would be expected based on its reliability, robustness, ease of use and high performance. High quality pure peptides are synthesized easily and rapidly and all types of peptide and organic chemistry reactions can be

performed in this highly flexible tabletop unit.

## Key Features

- Multiple peptide synthesizers performing both liquid and solid phase chemistry
- 1-96 compounds can be synthesized simultaneously
- Numerous amino acid and reaction vessel configurations
- Tabletop synthesizer
- Fully enclosed hood to contain fumes and unwanted odors
- Indexed tabletop allows maximum flexibility for reagent locations
- Automatic cleavage for Fmoc- chemistry
- Dilutor/syringe dispensing system with microliter accuracy
- Dual arm robotics available with either single- or multi-probe on second arm

## Key Specifications

- Variable scale synthesis
- Variable speed vortex mixing of the reaction block, 300-1200 rpm
- Teflon reactors for non-stick surface and inert reaction environment
- Teflon reactor frits for sample filtration
- Septa-capped reaction wells to maintain pressure, prevent cross-contamination and minimize solvent loss
- Indexed aluminum allows the tabletop for flexible reagent locations
- Up to 6 bulk external solvent lines
- 350 ml and 800 ml bottles for reagents
- Two dilutors for solvent reagents on first arm (in all Apex models)
- Gear pump for solvent delivery from dilutors
- Accurate solvent delivery down to 0.5 l
- Coaxial spray probe used for solvent delivery and liquid detection
- Probe wash station to prevent cross-contamination
- Nitrogen-assisted positive pressure vessel emptying in less than 1 minute
- Nitrogen and solvent detection systems to prevent operation in absence of reagents
- Fast-wash capabilities in the dual arm Apex models, 1-1.5 minutes in 96-well reactor
- Intuitive software for easy use and programming simple, point and click commands

## Key Options

Optional accessories:

- Teflon reaction blocks: 96-well, 40-well, 16-well and 8-well available
- Resin dispenser: 35 mg or 70 mg capability available
- Monomer racks: 4x9 racks with 35 ml bottles, 8x12 racks with 10 ml bottles, 2x5 racks with 125 ml bottles and 5x6 racks with 125 ml bottles available. Custom racks are available.
- Microtiter blocks for delivery of sample to a 96-well microtiter plate
- Cleavage blocks for deposition of crude sample after cleavage from resin; available in 96 x 4 ml vials, 40 x 6 ml vials, 16 x 15 ml vials and 8 x 35 ml vials

All Rights Reserved by AAPPTec © 2009

**EXHIBIT C**



# aapptec®

## aDvanceD auTomaTeD pepTiDe proTein TecHnoLogies
### The *Spirit* of Innovation

www.aapptec.com • 502-968-2223 • trich@aapptec.com

**Warranty and Service Contract good for 1 year from date of installation of Apex DC FW-S**

### INCLUDES:

- One PM visit during the first 6 months:PM consists of: Lubrication, Cleaning, returning Synthesizer to original tolerances, hardware/software diagnostics.
- Labor and covered parts
- Travel Expenses (transportation,room & meals)

Please Note: As of June 1st 2007, During PM service the following parts will be replaced one time at no additional charge to the customer: Filters, Isolation Block, Diluter Valves and Syringe.

aapptec® agrees to provide service described below to **Genscript Corporation,** (the "Purchaser") on the above named synthesizer (the "Instrument") for the period of time indicated above, subject to the following terms and conditions. aapptec® is the sole source, designer, manufacturer, patent holder, warranty and service center worldwide for all *Advanced ChemTech* synthesizers.

**TERMS & CONDITIONS:** aapptec® warrants that the Instrument will perform according to the specifications stated in the apex® DC FW-S Operator's Manual, (Formerly issued by *Advanced ChemTech Inc.* and now the responsibility of aapptec®). During the specified contract period provided the Instrument is operated using synthesis grade solvents and reagents and subject to the limitations, exclusions and other provisions of this agreement. aapptec® will not be responsible for poor performance due to impure chemicals, Purchaser's Chemistry or for negligent or unreasonable use of the instrument or in environments for which the Instrument was not intended. The Purchaser is expected to use the Instrument within the guidelines found in the apex® DC FW-S Operator's Manual supplied with the above-mentioned Instrument and to perform the general preventative maintenance activities as outlined in the Manual.



# aapptec®

### aovanceo automateo peptioe protein technologies
The *Spirit* of Innovation

www.aapptec.com • 502-968-2223 • trich@aapptec.com

aapptec® warrants that the services to be performed hereunder will be done in a workmanlike manner and shall conform to standards of the industry.

EXCLUSION OF OTHER WARRANTIES: **This warranty is expressly in lieu of all other warranties, express or implied (either in fact or by operation of law), statutory or otherwise, and is the only warranty given by** aapptec. **There are no warranties that extend beyond the description on the face hereof.   Without limiting the breadth of these two sentences,** aapptec **makes no implied warranty of merchantability, no implied warranty of fitness for any particular purpose, nor any other warranty, express or implied, with respect to the Instrument other than the express warranty on the face hereof.**

**LIMITATION AND EXCLUSION OF CERTAIN DAMAGES:** Purchaser agrees that if aapptec®   breaches any warranty in the performance of the service called for by this Agreement aapptec®'s sole liability is limited to re-servicing of the instrument(s) or, at aapptec®'s option, return of a prorated portion of the sum paid for such services.  Warranty for replaced parts not covered by this Agreement shall be covered for a period of ninety (90) days.

*aapptec® is not liable for any other damages whatsoever (including, without limitation, incidental damages, consequential damages, damages for loss of business profits, business interruption, loss of business information or other pecuniary loss) arising out of the use of, or inability to use, the Instrument, even if* aapptec *has been advised of the possibility of such damages.*

**TERM:** The term of this agreement is for a one-(1) year period shown herein.  The service and / or repair of the instrument by persons other than **aapptec®** designated technicians may result in the voiding of this contract.  Damage to the instrument from service rendered without the prior approval of **aapptec®** is the responsibility of the customer and may void the balance of this contract coverage.   This contract excludes coverage for any component damaged by improper use, mishandling and/or the installation of unauthorized modifications.

**TERMINATION**: aapptec® may terminate this contract at any time if the Instrument is kept in an unclean environment or is poorly ventilated.   Upon termination of the service



# aappТЕС®

### aDvanceD auтomaтeD рертiDe proтein тechnoloGies
## The *Spirit* of Innovation

www.aapptec.com • 502-968-2223 • trich@aapptec.com

contract, the stated price shall be prorated based upon the length of time the Agreement was in effect.

**EQUIPMENT AVAILABILITY:** The purchaser agrees to make the instrument covered under contract available for servicing between 8:00 AM and 5:00 PM, local time, on the date of each scheduled preventative maintenance or emergency service call. The time may be changed upon mutual agreement between **aappТЕС** and the Purchaser. **aappТЕС** will contact the Purchaser to set a mutually agreeable date, in advance, for each preventative maintenance call.

**VALIDATION:** This contract includes one preventative maintenance visit per year by an **aappТЕС** designated technician to verify that the instrument is fully functional and is operating properly. During this visit the **aappТЕС** technician will be available to certify the Purchaser's designated user(s). Instrument validation is included as part of the servicing process.

**COVERAGE OF PARTS:** Coverage includes the replacement or repair of robotics arms, power supply, interface boards, all electronic components, pumps, shaker assembly, valves (excluding diluter valves), liquid detector, gauges and fans.

**EXCLUDED PARTS:** The replacement or repair of the instrument housing, plastic ware,glassware,tubing,fitting, cables,diluter valves,syringe, probe, filters, isolation block, septum or other comsumable parts, including those that come into direct contact with reagents. Coverage is also excluded any computer peripheral or printer provided by AAPPTec for use with the synthesizer.

**GENERAL:** This Agreement shall be governed by and construed under the laws of the Commonwealth of Kentucky, without regard to conflicts of law rules. This Agreement constitutes the entire and exclusive expression of the parties' agreement with respect to the subject matter hereof, and supersedes all prior understandings with respect to the subject matter hereof. No change, modification or addition to this Agreement shall be enforceable unless in writing and signed by the party against whom enforcement is sought. This Agreement and any and all rights hereunder are nontransferable; any attempted transfer is void



# aapptec®

### aɒʋanceɒ auᴛomaᴛeɒ pepᴛɪɒe pʀoᴛeɪn ᴛecʜnoʟoɢɪes
## The *Spirit* of Innovation

www.aapptec.com · **502-968-2223** · trich@aapptec.com

For: **aapptec®**                              For: Genscript Corporation

Signed:                                        Signed:

*Taylor Rich*

Taylor Rich
Technical Sales Consultant

Dated: July 18, 2007                           Dated: ____/____/_____